UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| M. ELIZABETH REICH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-2946-B |
| | § | |
| NANCY A. BERRYHILL, in her official | § | |
| capacity as Acting Commissioner, Social | § | |
| Security Administration; SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Nancy A. Berryhill ("Berryhill") and the Social Security Administration's ("SSA") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) (Doc. 10), filed on February 8, 2019. The Motion challenges the Court's subject matter jurisdiction under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Mandamus Act, 28 U.S.C. § 1361,[1] arguing that adequate alternative remedies exist for Reich's causes of action. Doc. 10, Mot., 7–8. Defendants argue that the appropriate remedy is either to bring a claim under

---

[1] Reich's Complaint also lists § 1331, the Fifth Amendment, the Declaratory Judgment Act (28 U.S.C. § 2201), and the Little Tucker Act (28 U.S.C. § 1346(a)(2)) as grounds for subject matter jurisdiction for the Court, all of which Defendants address in their Motion. Doc. 1, Compl., ¶ 2. However, Reich's Response to the Motion to Dismiss cites only to the APA and Mandamus Act for subject matter jurisdiction, so the Court considers the other arguments abandoned. Doc. 11, Pl.'s Resp., ¶¶ 5, 15. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (citing *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001) (failing to pursue a claim beyond the complaint constitutes abandonment of the claim)). Furthermore, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

the Tucker Act in the Court of Federal Claims[2] or in the Civilian Board of Contract Appeals ("CBCA"). *Id.* at 8, 10. Because the Court finds that adequate alternative remedies exist to Plaintiff's APA and Mandamus Act claims, Defendants' Motion is hereby **GRANTED**.

# I.

# BACKGROUND

Reich is a former employee of the Social Security Administration. Doc. 1, Compl., ¶ 7. Reich worked for the SSA from 2000 to 2016 until Reich left to work for the City of Dallas. *Id.* ¶¶ 7, 9–10. In early 2016, the SSA relocated Reich from Woodlawn, Maryland to Dallas, Texas. *Id.* ¶ 8. The SSA provided Reich with relocation expenses totaling $17,769.50, and Reich signed a Service Agreement that required Reich to repay the relocation expenses if she left "Government service" within twelve months. *Id.* ¶¶ 8, 17. Prior to leaving the SSA, Reich requested a waiver to the Service Agreement and Defendant Berryhill, then Deputy Commissioner, recommended approval to the Acting Commissioner. *Id.* ¶ 10.

On September 3, 2016, the SSA provided a Notification of Personnel Action (NPA) to Reich that effectuated her separation and waived the Service Agreement provision for repayment of relocation expenses. *Id.* ¶ 11 (citing Ex. D, § 45). However, on September 16, 2016, Berryhill sent a letter to Reich denying the waiver for relocation expenses since "Government service" means the United States Government or the District of Columbia, not the City of Dallas. *Id.* ¶ 13; *Id.* (citing Ex. E). The SSA then sent a corrected NPA to Reich on October 5, 2016 that omitted the language

---

[2] The Court of Federal Claims is commonly referred to as the Claims Court so courts often use the terms interchangeably to refer to the same court. *See Kennedy Heights Apartments, Ltd. I v. McMillan*, 78 F. Supp. 2d 562, 564 (N.D. Tex. 1999).

for the Service Agreement waiver. *Id.* ¶ 15. Reich received a letter from the Director of Travel Services for SSA on November 12, 2016, that declared she owed a debt of $17,769.50 and contained information on how to request a hearing. *Id.* ¶ 17. Reich requested a hearing on November 17, 2016, by submitting "(1) a summary of relevant facts of which she is aware; (2) authorities supporting her position; (3) a list of witnesses relevant to the dispute; (4) copies of documentary evidence in her possession; and (5) a description of relevant documentary evidence likely in SSA's control." *Id.* ¶ 18. A year and a half passed without word from the agency until on June 1, 2018, Reich received a letter from the Department of the Treasury for a $23,185.79 debt with no explanation for the $5,416.29 increase in the debt. *Id.* ¶ 22 (citing Ex. J).

On November 5, 2018, Reich filed her Complaint with the Court (Doc. 1), seeking: (1) a declaration that the SSA waived the Service Agreement; (2) a declaration that the SSA's actions violated the APA[3]; (3) an order enjoining defendants from collecting the debt; (4) an order for the SSA to contact credit agencies to fix Reich's credit rating; (5) an award for costs and attorneys' fees; and (6) other relief that the Court deems proper. Doc. 1, Compl., 12. The SSA filed its Motion to Dismiss (Doc. 10) on February 8, 2019. In its Motion, Defendants contend that the Court must dismiss Reich's Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction because Reich's

---

[3] In her response, Reich cites to 20 C.F.R. § 422.810(h) for her argument that she had a right to a hearing about the debt. Doc. 11, Pl.'s Resp., ¶ 10. However, this regulation is for current employees at the SSA and not former employees. 20 C.F.R. § 422.810(a) ("This part prescribes . . . standards and procedures for the collection of debts owed by current SSA employees . . . ."). It may be that she instead intended to invoke 422.833(f), which governs "standards and procedures for collecting money from a debtor's disposable pay . . . to satisfy non-tax debts owed to us, the Social Security Administration," and also describes the requirements for hearings regarding such debts. *See* Doc. 1, Compl., ¶ 31 (citing C.F.R. § 422.805(b)(1)(iv)(A), which references § 422.833(f)). The Court finds this argument over process can also be appropriately addressed with the dispute over the debt by the adequate alternative remedy identified *infra* § III(B).

action "is forbidden by the Tucker Act" and "Reich also has adequate remedies available elsewhere." Doc. 10, Mot., 6. Plaintiff meanwhile frames this as a dispute over the SSA's "failure to provide her with the required process, not one where she disagrees with the Agency's conclusions resulting from the process," which is why, she argues, that "the APA provides subject-matter jurisdiction." Doc. 11, Pl.'s Resp., 4. Since all briefing has been received, the Court now considers the Motion.

## II.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). For that reason, they can adjudicate claims only when subject matter jurisdiction "is expressly conferred by the Constitution and federal statute." *Armstrong v. Tygart*, 886 F. Supp. 2d 572, 584 (W.D. Tex. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which a party may challenge that jurisdiction. *Id.*

A. *Whether a Federal Court Has Subject Matter Jurisdiction*

To determine subject matter jurisdiction the court may look to: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161. Additionally, "[a] Rule 12(b)(1) motion can mount either a facial or factual challenge." *MacKenzie v. Castro*, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016). A facial challenge occurs "[w]hen a party files a Rule 12(b)(1) motion without including evidence." *Id.* A factual challenge, by contrast, occurs when a party supports its Rule 12(b)(1) motion with evidence. *Id.*

In both cases, the burden of proof "'is on the party asserting jurisdiction.'" *Id.* (quoting *Ramming*, 281 F.3d at 161). So Plaintiff must prove that jurisdiction exists. Here, Defendants filed their Rule 12(b)(1) motion without any additional evidence, so it is considered a facial attack. Thus, the Court considers just "the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). And "[i]f those jurisdictional allegations are sufficient the complaint stands." *Id.*

Since "subject-matter jurisdiction . . . involves a court's power to hear a case, [it] can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). And if a federal court finds a lack of subject matter jurisdiction, the complaint must be dismissed entirely. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

B.  *Sovereign Immunity Must be Waived for a Federal Court to Have Subject Matter Jurisdiction*

Lastly, while district courts have federal question jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, sovereign immunity prevents a party from suing the United States "except to the extent it has consented to such by statute." *Shanbaum v. United States*, 32 F.3d 180, 182 (5th Cir. 1994). Whereas § 1331 provides general jurisdiction to federal courts, it "does not provide a general waiver of sovereign immunity." *Id.* Thus, Plaintiff must prove that the government waived its immunity to bring a claim against the government. *See Taylor-Callahan-Coleman Ctys. Dist. Adult Prob. Dep't v. Dole*, 948 F.2d 953, 956 (5th Cir. 1991) (explaining that the plaintiff must establish a waiver of sovereign immunity under the APA for a claim against the Department of Labor).

## III.

## ANALYSIS

Reich's causes of action rely on § 706 of the APA and the Mandamus Act as the basis for subject matter jurisdiction. Doc. 11, Pl.'s Resp., ¶¶ 5, 15. These statutes "offer similar means of compelling an agency to take action which by law it is required to take, [thus] claims made under this provision of the APA and the federal mandamus statue are subject to the same standard." *Yan v. Mueller*, 2007 WL 1521732, at *8 (S.D. Tex. May 24, 2007).

A. *Whether There Is Subject Matter Jurisdiction Under the APA*

The APA states that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Furthermore, the action "shall not be dismissed nor relief therein be denied on the ground that it is against the United States." *Id.* However, the Supreme Court held that "the APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions." *Califano v. Sanders*, 430 U.S. 99, 105 (1977). The APA serves as a vehicle for a limited waiver of sovereign immunity for "relief other than money damages." *St. Tammany Par. v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 318 (5th Cir. 2009) (citing 5 U.S.C. § 702). But there is no waiver of sovereign immunity when a statute precludes judicial review. *Id.* (citing 5 U.S.C. § 701(a)).

The APA authorizes judicial review only of "final agency action for which there is no other adequate remedy in a court. . . ." 5 U.S.C. § 704. An "alternative remedy need only be adequate." *De La Garza Gutierrez v. Pompeo*, 741 F. App'x 994, 998 (5th Cir. 2018). There is no requirement for the alternative remedy to be as effective as an APA lawsuit according to 5 U.S.C. § 704. *Id.* "Suit

under the Tucker Act in the Court of Claims has been held such an adequate remedy." *Warner v. Cox*, 487 F.2d 1301, 1304 (5th Cir. 1974). Additionally, the CBCA has also been held as an adequate remedy since it provides for review of agency action. *Cartwright Int'l. Van Lines, Inc. v. Doan*, 525 F. Supp. 2d 187, 195–96 (D.D.C. 2007).

Defendants argue that the Tucker Act and CBCA are adequate remedies for Reich. Doc. 10, Mot., 8, 10. Reich, herself, cites to the Little Tucker Act in her Complaint. Doc. 1, Compl., ¶ 2. Similar to the APA, the Tucker and Little Tucker Act waive sovereign immunity for the United States, but unlike the APA, they allow suits for money damages claims "premised on other sources of law (e.g., statutes or contracts)." *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009). The Little Tucker Act grants district courts original jurisdiction concurrently with the Court of Federal Claims for any "civil action or claim against the United States, not exceeding $10,000 in amount. . ." 28 U.S.C. § 1346(a)(2). Thus, the Claims Court has exclusive jurisdiction under the Tucker Act when the amount exceeds $10,000. *Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 358 (5th Cir. 1987). Important to this case, to bring a claim under either the Tucker or Little Tucker Act, the claim must be for monetary relief. *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't. of Homeland Sec.*, 490 F.3d 940, 943 (Fed. Cir. 2007). Alternatively, the CBCA allows for review of agency action or government contracts, and when applicable it "provides the exclusive mechanism for dispute resolution." *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995). The Court addresses the Tucker Act first.

1. The Tucker and Little Tucker Acts

The Tucker Act states that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any

express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Additionally, "the court shall have the power to remand appropriate matters to any administrative or executive body or official" as a remedy. 28 U.S.C. § 1491(a)(2). When examining whether subject matter jurisdiction lies with the district court or solely in the Claims Court, the court examines whether: "(1) the action is against the United States; (2) the action is founded upon the Constitution, federal statute, executive regulation, or government contract; and (3) the action seeks monetary relief in excess of $10,000." *Amoco*, 815 F.2d at 359.

First, while the United States is not named as a party, "an action against a federal agency or official will be treated as an action against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration' or if the effect of the judgment would be 'to restrain the Government from acting, or compel it to act.'" *Id.* (first quoting *Land v. Dollar*, 330 U.S. 731, 738 (1947); then quoting *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 704 (1949)). Reich's prayer for relief requests orders from the Court to "enjoin the SSA" and "order SSA" to commit certain acts so the Court construes this action to be one against the United States. Doc. 1, Compl., 12.

Second, this case is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491. Reich signed a Service Agreement—a contract—with the SSA that she would repay relocation expenses if she left government service within twelve months of relocation. Doc. 1, Compl., ¶ 8. However, Reich urges the Court not to view her case as "a contract claim against the government" but as "an order vacating Berryhill's final determination" due to a failure to follow the "SSA's own regulations." Doc. 11, Pl.'s Resp., ¶¶ 7–8. But without the Service

Agreement, there would be no dispute. Thus, the Court finds that this action is founded on a contract, and the second element is met.

Third, the Court must determine whether this action seeks monetary relief of more than $10,000. Doc. 1, Compl., ¶¶ 21–22; Ex. J (letter from the United States Treasury describing the unpaid debt). Reich asks the Court for a permanent and preliminary injunction against Defendants to prevent the collection of the debt and to "set aside agency action, findings, and conclusions." Doc. 1, Compl., ¶ 30 (citing 5 U.S.C. § 706(2)); *Id.* at 12. When assessing "the 'murky' area of Tucker Act jurisprudence . . . the substance of the pleadings must prevail over their form." *Amoco*, 815 F.2d at 361 (construing pleadings that "do not, on their face, ask for a money judgment" and finding that they belong in Claims Court). The Court must discern the "essence," "primary objective," or "ultimate aim" of the claim. *Id.* at 362. Here, Reich appears to seek monetary relief of $23,185.79 from the SSA through either an injunction or "set[ting] aside agency action" that would cancel her debt, far in excess of $10,000 as required by the Tucker Act. Doc. 1, Compl., ¶ 30 (citing 5 U.S.C. § 706(2)); *Id.* 12. However, "[a]n award in the form of an offset of other debt is a form of monetary relief," but a "debt cancellation claim is not one for monetary relief." *Gonzales*, 490 F.3d at 945. Since Reich seeks the cancellation of debt and not the offset of a debt, her claim is not one for monetary relief. Thus, the Court finds that the Tucker Act is not an adequate alternative remedy for Reich's claim since the Court of Federal Claims lacks jurisdiction over requests for non-monetary relief.

Nor is jurisdiction proper under the Little Tucker Act, which also requires that the contract claims be for monetary relief. *Id.* at 945–46 (clarifying that district courts lack jurisdiction under the

Little Tucker Act for debt cancellation claims since they are not claims for monetary relief). The Court now turns to consider whether the CBCA is an adequate alternative remedy to the APA.

### 3. The Civilian Board of Contract Appeals

Defendants argue that the CBCA provides an adequate alternative remedy for Reich's claim. Doc. 10, Mot., 10–12. However, Reich argues that the CBCA is inadequate because "Reich's suit arises from Berryhill's failure to provide her with the required process" and not from a disagreement with the agency's conclusions. Doc. 11, Pl.'s Resp., ¶ 19. Regardless of whether the issue is about due process or disagreement with the agency's conclusions, the Court finds that the CBCA is an adequate remedy since it regularly handles similar disputes such as Reich's.

Should a government contractor[4] disagree with the contracting officer's decision, the contractor may appeal the decision to an agency board like the CBCA. 41 U.S.C. § 7104(a). The CBCA "has jurisdiction to decide any appeal from a decision of a contracting officer[5] of any executive agency," other than a few that are irrelevant here. 41 U.S.C. § 7105(e)(1)(B).[6] Alternatively, if appropriate, a contractor may "bring an action directly on the claim in the United States Court of

---

[4] A contractor is defined as "a party to a Federal Government contract other than the Federal Government." 41 U.S.C. § 7101(7). Thus, Reich is a contractor under the CDA due to her Service Agreement with the Federal Government.

[5] A contracting officer is defined as: "an individual who, by appointment in accordance with applicable regulations, has the authority to make and administer contracts and to make determinations and findings with respect to contracts" and "includes an authorized representative of the contracting officer, acting within the limits of the representative's authority." 41 U.S.C. § 7101(6). The April 9, 2018 letter from John W. Simermeyer, SSA Acting Assistant Deputy Commissioner of Budget, Finance and Management, indicates that he was the contracting officer or in charge of the contracting officer that determined the breach of the Service Agreement. *See* Doc. 1, Compl., Ex. A.

[6] 41 U.S.C. §§ 7101–09 comprise the Contract Disputes Act ("CDA"), which predominantly covers disputes regarding contracts between contractors, but also covers disputes over relocation expenses.

Federal Claims" for *de novo* review. 41 U.S.C. § 7104(b)(1). The statute does not state that review is proper in a district court. *See Tex. Health Choice, L.C. v. Office of Pers. Mgmt.*, 400 F.3d 895, 900 (stating that the Court of Federal Claims or the CBCA is the proper venue for a dispute over a government contract).

Furthermore, the CBCA regularly reviews relocation-expense claims filed under 5 U.S.C. § 5724(i) which reads:

> [a]n agency may pay travel and transportation expenses (including storage of household goods and personal effects) and other relocation allowances . . . only after the employee agrees in writing to remain in the Government service for 12 months after his transfer, unless separated for reasons beyond his control that are acceptable to the agency concerned. If the employee violates the agreement, the money spent . . . is recoverable from the employee as a debt due the Government.

5 U.S.C. § 5724(i). *See In re Garber*, CBCA 2400-RELO, 11-2 BCA ¶ 34,831 (considering a similar dispute under § 5724(i)). Reich signed a 12-month contract, the Service Agreement, with the SSA and separated from the SSA within 12 months, so § 5724(i) governs this dispute. While Reich argues that her claim is concerned with process and not the decision of the SSA to deny her a waiver of her relocation expenses, her claim would not exist without her disagreement of the waiver so the Court finds her claim is best handled by the CBCA since it regularly handles such matters. *See Tex. Health Choice, L.C.* 400 F.3d at 898 (holding that the underlying contract was governed by the CDA so the district court did not have jurisdiction under the APA). Additionally, when examining the cases cited by the SSA, the cases overwhelming demonstrate that the CBCA regularly adjudicates disputes that fall within the discretion of an agency such as for the waiver of a Service Agreement. *See In re Garber*, CBCA 2400-RELO, 11-2 BCA ¶ 34,831 (quoting *In re Shimata*, CBCA 1135-RELO, 08-2 BCA ¶ 33,901, at 167,775). This aligns with the general policy identified by the Federal Circuit that

the resolution of government contract disputes should be centralized "in the Court of Federal Claims, rather than in district court . . . to ensure national uniformity in government contract law." *Tex. Health Choice, L.C.* 400 F.3d at 899 (citing *Katz v. Cisneros*, 16 F.3d 1204, 1210 (Fed. Cir. 1994)). Thus, the remedy sought by Reich can be found in the CBCA. As the CBCA is an adequate alternative remedy for Reich's claims, this Court lacks subject matter jurisdiction under the APA.[7]

B.     *Whether There Is Subject Matter Jurisdiction Under the Mandamus Act*

The Mandamus Act grants district courts original jurisdiction for "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, mandamus is "an extraordinary remedy" and a plaintiff "must establish '(1) a clear right to relief, (2) a clear duty by the [defendant] to do the act requested, and (3) the lack of any other adequate remedy.'" *Davis v. Fechtel*, 150 F.3d 486, 487 (5th Cir. 1998) (quoting *In re Stone*, 118 F.3d 1032, 1034 (5th Cir. 1997)).

While Reich may have a right to relief and there may be a duty by the Defendants to act, the Court already found an adequate remedy exists in the CBCA, so it is unnecessary to discuss the first two elements. *See Carter v. Seamans*, 411 F.2d 767, 773–74 (5th Cir. 1969) (discussing only the adequate-remedy element). And, since the same standard applies to the APA and the Mandamus Act, the Court also lacks subject matter jurisdiction under the Mandamus Act. *Yan*, 2007 WL 1521732, at *8; *See supra* § III(A)(3).

---

[7] Plaintiff cites several other cases in support of her argument that jurisdiction is nonetheless proper under the APA, but the Court finds those cases distinguishable, or not in support of Plaintiff's argument. *See* Doc. 11, Pl.'s Resp., 2. For example, none address the question of whether review is proper in the CBCA.

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants Berryhill and the SSA's Motion to Dismiss (Doc. 10), finding that the Court lacks subject matter jurisdiction over Plaintiff Reich's claim. Thus, the Court **DISMISSES** Reich's claims.

**SO ORDERED.**

**SIGNED: July 2, 2019.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE